RICHARD HILL, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Hill v. Commissioner
Docket Nos. 34180-86; 615-87.
United States Tax Court
T.C. Memo 1988-414; 1988 Tax Ct. Memo LEXIS 451; 56 T.C.M. (CCH) 33; T.C.M. (RIA) 88414; September 1, 1988. Richard Hill, pro se. Wesley F. McNamara, for the respondent. FEATHERSTON
MEMORANDUM FINDINGS OF FACT AND OPINION FEATHERSTON, Judge: These consolidated cases involve deficiencies in petitioner's Federal income taxes and additions to tax as follows: 1982
1983
Deficiency
$ 6,298.00
$ 4,962.00
Additions to tax:
Section 6651(a) [1]
$   458.25
$ 1,071.75
Section 6653(a)(1)
314.90
248.10
Section 6654(a)
69.77
294.42
Section 6661
629.80
--
Also, respondent determined that petitioner is liable for an addition to tax under section 6653(a)(2) in the amount of 50 percent of the interest due on the underpayments for 1982 and 1983. On brief respondent has conceded, however, that petitioner is not liable for the section 6654(a) and section 6661 additions to tax for 1982. The issues for decision are as follows: (1) Whether petitioner's stock car racing activity during 1982 and 1983 was a trade or business in which his *453 alleged expenditures would be deductible under section 162(a); a subsidiary issue is whether petitioner has substantiated his claimed deductions for this activity. (2) Whether petitioner's failure to file timely income tax returns for 1982 and 1983 was due to reasonable cause and not due to willful neglect within the meaning of section 6651(a). (3) Whether any part of the underpayment of tax for 1982 and 1983 was due to negligence or intentional disregard of the regulations within the meaning of section 6653(a)(1) and (2). (4) Whether petitioner is liable for an addition to tax under section 6654(a) for failure to pay estimated tax. General Facts
At the time the petitions were filed, petitioner was a legal resident of Creswell, Oregon. During 1982 and 1983, he worked most of the time as an electrician and received the following items of income from the indicated sources: Payor
Type
Amount
Fischback & Moore
Wages
$ 13,187.00
L. H. Morris Electric, Inc.
Wages
12,358.00
IBEW
Vacation Pay
31.00
State
Unemployment
3,121.00
Compensation
TOTAL
$ 28,697.00
1983
Wells Fargo Bank
Interest
$     12.00
South Santiam District
Wages
493.00
Medford Raceway
Winnings
500.00
IBEW
Pension Lump Sum
2,110.00
L. H. Morris Electric, Inc.
Wages
2,682.00
Wright-Schuhar
Wages
16,638.00
State
Unemployment
3,675.00
Compensation
TOTAL
$ 26,110.00
*454 For convenience, we shall combine our findings of fact with the legal discussion of the several issues. Car Racing Loss Issue
On some weekends and holidays during the summer months of 1982 and 1983, petitioner raced a late-model stock car at Cottage Grove, Medford, Eugene, Roseburg or Lebanon, Oregon. From this activity, he claims a deductible loss of $ 8,090.58 for 1982 and $ 4,333.23 for 1983. Respondent contends that the alleged losses are not allowable because petitioner's racing activity was a hobby rather than a trade or business and that, in any event, petitioner has not sustantiated his alleged expenses. To demonstrate that he is entitled to the claimed deductions, petitioner must show that his racing activity was a "trade or business" within the meaning of section 162(a) and that he paid or incurred expenses in that business. He must show that he engaged in the activity with "an actual and honest objective of making a profit." Dreicer v. Commissioner,78 T.C. 642, 646 (1982), affd. without opinion 702 F.2d 1205 (D.C. Cir. 1983). In Commissioner v. Groetzinger,480 U.S. 23, 35 (1987), the Supreme Court stated *455 that: to be engaged in a trade or business, the taxpayer must be involved in the activity with continuity and regularity and * * * the taxpayer's primary purpose for engaging in the activity must be for income or profit. A sporadic activity, a hobby, or an amusement diversion does not qualify. Some of the relevant factors to be considered in evaluating whether an activity is a business or a hobby are listed in section 1.183-2(b), Income Tax Regs., including: (1) the manner in which the taxpayer carried on the activity; (2) the expertise of the taxpayer or his advisors; (3) the time and effort expended by the taxpayer in carrying on the activity; (4) the expectation that assets used in the activity may appreciate in value; (5) the success of the taxpayer in carrying on other similar or dissimilar activities; (6) the taxpayer's history of income or loss with respect to the activity; (7) the amount of occasional profit, if any, which is earned; (8) the financial status of the taxpayer; and (9) whether elements of personal pleasure or recreation are involved. Not *456 all of these factors are applicable in every case and no one factor is conclusive in making the determination. Allen v. Commissioner,72 T.C. 28, 34 (1979). In the light of the evidence before us, we find that petitioner has not carried his burden of proving that his racing activity was a trade or business within the meaning of section 162(a). He is not, therefore, entitled to the disputed deductions except as stated below. Prior to 1982, petitioner had some training and experience in stock car racing including work as a pit man for a professional racer and a 5-day course of study of stock cars. There is no evidence, however, that he even contemplated devoting more than his spare time to stock car racing. We find that his activity was a hobby rather than a business. Petitioner's principal activity was that of an electrician in the construction business. His assignments in this business frequently required him to be away from home; in fact, his 1981 income tax return, the only return in evidence showing any income or deductions, discloses that he drove 30,000 miles that year in carrying on his work as an electrician. In 1983, he worked in Stockton, California *457 from March through June. He could devote time to his racing activity only when he was at his home. Apparently in an effort to show that he carried on the racing activity in a businesslike manner, petitioner testified that, at the beginning of 1982, he estimated that his earnings from auto racing would be $ 9,950 and that his expenses would be $ 5,496. He based this projection on the assumption that he would win $ 350 in each of 25 races and $ 400 in each of three races. He made a similar projection for 1983. Petitioner raced only on weekends. The racing season was limited mainly to the period from May 1 through Labor Day. To win 28 races, he testified that he estimated that he would have to enter approximately 36 races. He would not be able to race on weekends when he was away from home on electrical work assignments. Nor would he be able to participate when the races were rained out or his automobile crashed or otherwise was not operating properly. Petitioner's alleged income projections have no relation to reality. The facts are that, during 1982, he entered only seven races and grossed only $ 505 in prize money from three of those races. During 1983, he raced only *458 12 times during 10 weekends and won $ 915 in prize money in six races. Similarly, his experience in 1981 as shown on his tax return for that year, provides no basis for the alleged optimistic projections; petitioner reported racing expenses in excess of $ 7,000 and racing income of only $ 900. At one point in his testimony, petitioner testified that he could "figure on" racing one to three times during a weekend. In fact, he never raced more than once on a weekend in 1982 and on only one weekend in 1983, the July 4 holiday period, did he enter more than one race. In making his income projections for 1982 and 1983, he admitted that he did not take into account his record of losses in prior years. Petitioner's 1981 income tax return shows that in February 1980 he paid $ 6,088 for his stock car chassis. He estimated its useful life at 3 years. According to his own testimony, his estimates for depreciation, fuel, tires, engine replacement and miscellaneous expenses came to nearly $ 5,500. In fact, the rent for the shop where he kept the car, according to his testimony, came to $ 150 per month or $ 1,800 per year. Given the substantial expenses required for the racing activity, *459 the limited amount of time that he could devote to racing because of his work as an electrician, the limited number of races he could enter, the limited amount of the prize money that he could win in the races he entered, and the absence of any assurance that he would win a prize in every race, simple mathematics would almost preclude a profit from the activity. He was able to engage in this expensive activity only because he had substantial income from his work as an electrician. Petitioner filed a Form 1040 for 1982 on which he inserted "Object. Self Incrimination" in almost every blank space. He filed no Form 1040 or other purported return of any kind for 1983. Petitioner alleged that he was entitled to the stock car racing deductions for 1982 and 1983 in the petitions filed in these proceedings. At the trial of these cases, petitioner attempted to offer trite and timeworn tax protestor arguments on other issues. He pursued the same kind of arguments in this brief. We are convinced that his claims of the huge losses from his racing activity are simply another form of tax protest -- an apparent effort to avoid paying taxes on his income. In summary, we find that petitioner's *460 stock car racing activity was not a trade or business within the meaning of section 162(a). We find as a fact that he did not have "an actual and honest objective of making a profit." Dreicer v. Commissioner, 78 T.C. 642, 646 (1982), affd. without opinion 702 F.2d 1205 (D.C. Cir. 1983). Petitioner's racing activity was a hobby and a source of recreation rather than a business. Petitioner's 1983 earnings as determined by respondent included $ 500 earned at the Medford Raceway. Although the full amount of the claimed deductions have not been substantiated, we find that petitioner expended at least $ 500 on his stock car racing activity in 1983. To that extent the deductions for 1983 are allowable. Sec. 183(b). Otherwise, the racing activity deductions are not allowable. Section 6651: Failure to File Returns
Section 6651(a) provides for an addition to tax not to exceed 25 percent of the underpayment in the case of failure to file a timely tax return unless such failure was due to reasonable cause and was not due to willful neglect. As stated above, *461 petitioner filed a Form 1040 for 1982 on which the words "Object. Self Incrimination" were written in almost every blank space. The form gave no information on petitioner's income or deductions. Petitioner filed no Form 1040 or other purported return for 1983. The law is settled that the Form 1040 filed for 1982 was not an income tax return within the meaning of section 6651(a). E.g., United States v. Johnson,577 F.2d 1304, 1310-1311 (5th Cir. 1978); United States v. Porth,426 F.2d 519, 522-523 (10th Cir. 1970). Petitioner filed nothing in the way of a return for 1983. Petitioner's tax protester arguments -- that he was not required by law to file a return, that requiring him to file a return would invade his constitutional rights, etc. -- have no merit. He offered no other justification for failure to file returns. The section 6651(a) additions to tax are sustained. Section 6653(a): Negligence
Section 6653(a)(1) imposes an addition to tax in the amount of 5 percent of an underpayment of tax if any part of the underpayment is due to negligence *462 or intentional disregard of the regulations. Section 6653(a)(2) imposes a further addition to tax in an amount equal to 50 percent of the interest payable on the portion of the underpayment attributable to negligence. Given petitioner's failure to file returns for 1982 and 1983 and his reliance on stale tax protester arguments, we find that his entire amount of the underpayments of tax for both years was attributable to negligence or intentional disregard of the tax laws. Our conclusion is buttressed by the fact that he instructed some of his employers not to withhold taxes from his income. To take that position and, with his substantial income, to fail to file returns without advice of counsel in itself was negligence. The section 6653(a)(1) and (a)(2) additions to tax are sustained. Section 6654
In the form in effect for 1983, section 6654 provides for the imposition of an addition to tax for underpayment of estimated tax. As noted above, the parties have stipulated that petitioner "instructed some of his employers to not withhold federal income taxes from his wages during 1983" *463 and that he "made no payments towards his federal income taxes for the year 1983 other than the amounts withheld from his wages." The parties have also stipulated that only $ 677 was withheld from his 1983 wages as Federal income taxes. Petitioner has not shown that he falls within any of the section 6654 exceptions. Accordingly, the determined addition to tax under that section must be sustained. To reflect the foregoing, Decisions will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise noted.↩