RONALD W. SMITH, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Smith v. Commissioner
Docket No. 671-86.
United States Tax Court
T.C. Memo 1989-198; 1989 Tax Ct. Memo LEXIS 198; 57 T.C.M. (CCH) 261; T.C.M. (RIA) 89198; April 27, 1989
C. Page Hamrick III, for the petitioner. Andrew M. Winkler, for the respondent. HAMBLEN
MEMORANDUM FINDINGS OF FACT AND OPINION HAMBLEN, Judge: Respondent determined deficiencies of $ 1,836 and $ 3,817.88, respectively, in petitioner's 1982 and 1983 Federal income taxes. The issues to be decided are: (1) whether petitioner's drag racing activity was an activity not engaged in for profit during 1982 and 1983, and (2) whether petitioner is entitled to an investment tax credit in 1983 with respect to an automobile and a pickup truck used in petitioner's drag racing activity. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. The stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioner Ronald W. Smith resided in Charleston, West Virginia, at the time the petition herein was filed. During the years at issue, petitioner worked 40 hours a week as a pipefitter for E. I. Dupont De Nemours and Company *201 (Dupont), and depended on his earnings from Dupont to support his family. Prior to the years at issue, petitioner had participated in drag racing for sport and recreation for more than 11 years. Petitioner temporarily withdrew from the activity in 1973 because of the expenses that drag racing entailed and in order to spend more time with his children. By late 1979, petitioner decided to participate again in drag racing in the "pure stock" class and began racing during the 1980 season. The pure stock class was one of 11 drag racing classes and the least expensive in which to participate. It was also the class with the lowest dollar prizes for races won. Each participant in the pure stock class was required to race a factory-built automobile, with essentially all parts being of the type originally installed. To satisfy this requirement, petitioner acquired a 1966 Chevrolet Nova (Nova) at a cost of $ 2,500. The only other prerequisites for participation in the "pure stock" class were (1) an $ 18 membership to the International Hotrod Association (IHRA), which was the sanctioning body for the races, (2) a valid driver's license, and (3) payment of a minimal entry fee. The drag *202 racing season ran from mid-March through the first week in November. Generally, the races were held only on weekends. In 1980, petitioner won the IHRA World Championship in the pure stock class. In 1981, petitioner decided that his son, who turned age 16 during that year, had the capability of being a good drag racer. Throughout 1981, both petitioner and his son attended races as participants, but petitioner and his son would alternate racing in petitioner's Nova at the racing events they attended, with petitioner's son racing in more events than his father. Petitioner's son won the IHRA World Championship in the pure stock class in 1981. Petitioner backed his son's participation in racing during the 1982 and 1983 racing seasons by paying all of his son's racing expenses. However, petitioner considered his son's winnings as income taxable to his son. [1]
Petitioner claimed as deductions all of his own and his son's expenses of attending the races. In addition, petitioner claimed and deducted the expenses incurred for a female companion of petitioner, petitioner's daughter, *203 and several friends of petitioner, when these individuals attended the races. Petitioner's female companion, daughter, and friends volunteered to provide whatever assistance they could provide in petitioner's racing activity. Petitioner solicited sponsors for his racing activity in the hope of defraying some of his racing expenses. If sponsors were successfully solicited, sponsors would typically provide money, parts, or services in exchange for an advertising decal on a racer's car. Petitioner received minimal sponsorship income from his racing activity for the years at issue. This sponsorship income, though never quantified by petitioner, was never enough to defray the annual losses incurred as a result of petitioner's racing activity. Further, petitioner earned additional income, although minimal, by purchasing automobile parts as a wholesaler and selling those parts retail to other drag racers at the races he attended. Petitioner reported gross earnings, expenses, and net losses from drag racing on his Federal income tax returns for the years 1980 through 1986 as follows: Total Income
From Drag Races
Total
and Sponsorships
Deductions
Year
Reported
Claimed
Net Loss
1980
$  2,385
$  7,066
($  4,681)
1981
782
11,462
(  10,680)
1982
2,560
11,723
(   9,163)
1983
1,755
15,274
(  13,519)
1984
6,730
14,751
(   8,021)
1985
6,597
14,831
(   8,234)
1986
14,250
17,382
(   3,132)
*204 Based on the income potential of drag racing and petitioner's manner and level of participation in drag racing, petitioner could not have realized a net profit solely from his drag racing activity for the years at issue. If petitioner had personally entered and placed first in every race petitioner and his son attended in the years at issue, it may have been theoretically possible to earn a net profit from drag racing if petitioner was the recipient of all of the winnings. However, petitioner's son entered the majority of the races that petitioner and his son attended and kept the winnings from the races he won. Further, petitioner's and his son's combined record did not result in their placing first in most of the races in which they participated. Petitioner's son's participation in drag racing substantially reduced petitioner's potential for earning a profit while increasing petitioner's losses as petitioner paid and deducted all of his son's expenses. In 1983, petitioner purchased a second automobile which he raced, beginning in 1984, in the "hotrod" class where the prize monies were greater. Petitioner also purchased a pickup truck in 1983 which he used in connection *205 with his racing activity. Petitioner claimed an investment tax credit of $ 838.88 in 1983 with respect to this automobile and pickup truck, based on their use in his racing activity. In his notice of deficiency dated October 30, 1985, respondent allowed petitioner's drag racing deductions but only to the extent of petitioner's gross income from his drag racing activity. Respondent disallowed petitioner's net drag racing losses and investment tax credit on the grounds that petitioner did not engage in drag racing for profit for the years at issue. OPINION The first issue is whether petitioner's drag racing activity was an activity engaged in for profit permitting petitioner to deduct his net drag racing losses. Section 183(a) [2] generally provides that if an individual engages in an activity, and "if such activity is not engaged in for profit, no deduction attributable to such activity shall be allowed under this chapter except as provided in this section." [3] Section 183(c) defines an activity not engaged in for profit as "any activity other than one with respect to which deductions are allowable for the taxable year under section 162 or under paragraph (1) or (2) of section *206 212." Petitioner has the burden of proof to establish that he engaged in his drag racing activity with an actual and honest objective of making a profit. Dreicer v. Commissioner,78 T.C. 642, 644-645 (1982), affd. without opinion 702 F.2d 1205 (D.C. Cir. 1983); Surloff v. Commissioner,81 T.C. 210, 233 (1983); Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a). The determination of whether petitioner had an actual and honest objective of making a profit requires an examination of all the surrounding *207 facts and circumstances in the case. Sec. 1.183-2(b), Income Tax Regs.; Golanty v. Commissioner,72 T.C. 411 (1979), affd. without published opinion 647 F.2d 170 (9th Cir. 1981). We give greater weight to the objective facts than to a taxpayer's mere statement of intent. Sec. 1.183-2(a), Income Tax Regs.; Dreicer v. Commissioner,78 T.C. at 645. Section 1.183-2(b), Income Tax Regs., sets forth relevant factors to consider in determining whether an activity is engaged in for profit. The relevant factors which are normally taken into account include: 1) the manner in which the taxpayer carries on the activity; 2) the expertise of the taxpayer or his advisors; 3) the time and effort expended by the taxpayer in carrying on the activity; 4) the expectation that assets used in the activity may appreciate in value; 5) the success of the taxpayer in carrying on other similar or dissimilar activities; 6) the taxpayer's history of income or loss with respect to the activity; 7) the amount of occasional profits, if any, which are earned; 8) the financial status of the taxpayer; and 9) whether elements of personal pleasure or recreation are involved. *208 No one factor is determinative of the taxpayer's objective of making a profit. Abramson v. Commissioner,86 T.C. 360, 371 (1986); Golanty v. Commissioner,72 T.C. at 426. After examining the facts of this case in light of the relevant factors, we conclude that petitioner's drag racing activity was not engaged in for profit. For seven consecutive years, petitioner's net losses totaled $ 57,430. A record of such losses over so many years is indicative that petitioner did not have the requisite objective of making a profit. [4] See sec. 1.183-2(b)(6), Income Tax Regs. We find that petitioner's drag racing activity was merely a hobby from which petitioner derived great pleasure and was willing to pursue despite significant losses year after year. Although we recognize that "a business will not be turned into a hobby merely because the owner finds it pleasurable," Jackson v. Commissioner,59 T.C. 312, 317 (1972), we find that petitioner did not have an actual and honest objective of making a profit as a drag racer. *209 Petitioner asserts that his drag racing was an activity engaged in for profit because it was theoretically possible to earn a net profit from drag racing. Petitioner argues that if he had entered and won all races that both he and his son alternated in entering, he could have earned a net profit. Petitioner added that, if potential sponsorship income were added to that net profit, it would be possible to earn an even greater profit as a drag racer. However, even if the possibility of earning a net profit from drag racing existed, petitioner did not pursue drag racing in a manner that was conducive to earning such a possible net profit. More often than not, petitioner's son would be the racer who would enter a race in petitioner's Nova and at petitioner's expense. Any prize money won by his son would be kept by his son and not be reported as taxable income by petitioner. Petitioner was in a posture where he could never realize a net profit so long as petitioner's son raced instead of petitioner, so long as his son kept the earnings from the races the son won, and so long as petitioner was unsuccessful soliciting a substantial number of sponsors which resulted from a *210 lack of consistent success as a drag racer. [5] The best petitioner's earnings from drag racing and minimal sponsorship income could do was to defray the costs of what we find to be an expensive weekend recreational activity for both himself and his son. Accordingly, we sustain respondent's determination with respect to the disallowed deductions incurred in petitioner's drag racing activity. The second issue is whether petitioner is entitled to an investment tax credit in 1983 with respect to the cost of an automobile and a pickup *211 truck used in connection with his drag racing activity. Section 38 allows a credit in tax determined under sections 46 and 48. Under section 46, a specified percentage of the taxpayer's investment in section 38 property is determined as a credit. Section 38 property includes only certain property having a useful life of three years or more for which depreciation is allowable. Sec. 48(a). Section 167(a) allows a depreciation deduction only for property used in a trade or business or held for the production of income. Accordingly, since we have found that petitioner's drag racing activity was an activity not engaged in for profit, we hold that petitioner is not entitled to the investment tax credit under section 38 with respect to the cost of an automobile and pickup truck purchased in 1983. To reflect the foregoing, Decision will be entered under Rule 155.
Footnotes
1. The amount of petitioner's son's winnings for the years at issue is not disclosed in the record.↩
2. All section references are to the Internal Revenue Code of 1954, as amended and in effect for the years at issue. All Rule references are to the Tax Court Rules of Practice and Procedure. ↩
3. Section 183(b)(1) allows deductions related to the activity which are allowable regardless of whether the activity is engaged in for profit, such as interest and taxes. In addition, section 183(b)(2) authorizes a deduction for other expenses related to the activity to the extent that the gross income derived from the activity exceeds the deductions which are allowable irrespective of an objective to realize a profit.↩
4. Cf. Kraettli v. Commissioner,T.C. Memo. 1988-413; 56 T.C.M. 29↩, 32; 57 P-H Memo T.C. par. 88,413 at 88-2073.
5. Cf. Hill v. Commissioner,T.C. Memo. 1988-414, 56 T.C.M. 33, 35; 57 P-H Memo T.C. par. 88,414 at 88-2077. In Hill we noted, Given the substantial expenses required for the racing activity, the limited amount of time that he could devote to racing because of his work as an electrician, the limited number of races he could enter, the limited amount of the prize money that he could win in the races he entered, and the absence of any assurance that he would win a prize in every race, simple mathematics would almost preclude a profit from the activity. * * * This language is equally applicable to the instant case.↩